UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FAREAST COMMODITIES RESOURCES LTD.,<br><br>                            Plaintiff,<br><br>          -against-<br><br>SGS SA and SGS INDIA PRIVATE LTD.,<br><br>                            Defendants. | 11 Civ. 1322 (LLS)<br>ECF CASE<br><br><br>**<u>VERIFIED COMPLAINT IN ADMIRALTY</u>** |

Plaintiff, Fareast Commodities Resources Ltd. ("Fareast"), by its attorneys, Eaton & Van Winkle LLP, for its Verified Complaint against Defendants, SGS SA and SGS India Private Ltd. ("SGS India"), upon knowledge as to its own acts and otherwise on information and belief, alleges as follows:

<u>**JURISDICTION**</u>

1.      This is a case of admiralty and maritime jurisdiction under 28 U.S.C. 1333, and is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and Rule B of the Supplemental Rules for Admiralty or Maritime Claims.

<u>**PARTIES**</u>

2.      At all relevant times, Fareast was and still is a corporation, organized and existing under the laws of Hong Kong, with an office and place of business located at 8 Upper Brook Street, London England W1K 6PA.

3.      At all relevant times, SGS SA was and still is a company, organized and existing under the laws of Geneva, Switzerland, with an office and place of business at 1 place des Alpes, P.O. Box 2152, CH-1211 Geneva 1, Switzerland.

4.      At all relevant times, SGS India was and still is a company, organized and existing under the laws of India, with an office and place of business at 4B, Adi Shankarachary a Marg, 400 083 Vikhroli (West), Mumbai, India.

## UNDERLYING EVENTS

5.      On or about November 5, 2009, Fareast entered into a contract with Bilasraika Sponde Iron India Pvt Ltd. ("Bilasraika") for Fareast to purchase and Bilasraika to sell iron ore fines, after which three addendums were entered into, dated November 6, 2009, December 30, 2009 and January 6, 2010 (collectively, the "Contract").  A copy of the Contract is annexed hereto as Exhibit A and incorporated herein.

6.      Pursuant to Addendum No. 3 to the Contract, the unit price Fareast was obligated to pay was US$29.40 per dry metric ton ("DMC") of iron ore having a specification of 52% purity (Contract Paragraph 4), subject to:

      a. a price adjustment penalty against Bilasraika if the ore had iron content below 51% (Contract Paragraph 6); or

      b. an option for Fareast to reject the iron ore if the content was below 51% (Contract Paragraph 6).

7.      Other relevant terms and conditions of the Contract include, but are not limited to, the following:

      a. The load port was Goa Port, India, and the discharge port was Main Sea Port, China (Addendum No. 1; Para. 3), with Fareast to nominate a vessel for Bilasraika's acceptance (Contract Para. 10);

2

b. Bilasraika, as seller at its own expense, was required to appoint either SGS India or another surveyor to test, determine, ascertain and certify (i) the weight of the shipment and (ii) the specification of the iron ore in each shipment (Contract Paras. 7 and 8);

c. Bilasraika's final invoice was to be submitted on the basis of the surveyor's weight certificate and the certificate of analysis of the iron ore (Contract Para. 9(i));

d. Fareast was obligated to establish an irrevocable letter of credit ("L/C") with BNP Paribas (Suisse) SA, Geneva in U.S. dollars to cover 100% of the shipment value to be owed to Bilasraika (Addendum No. 1; Para. 9); and

e. The L/C was "payable at sight" upon presentment of, inter alia, Bilasraika's signed invoice and certificates of weight and quality issued by the surveyor (Contract Para. 9(ii)).

8.      Bilasraika retained, contracted with and appointed SGS India to conduct the inspections and certifications of the weight and quality of the iron ore which was the subject of the Contract.

9.      Fareast nominated the vessel Maha Deepa with respect to the shipment of the iron ore at issue from Goa Port, India to Main Sea Port, China.

10.     Over the period January 6-January 26, 2010, SGS India conducted the inspections of the weight and quality of the iron ore at issue at Goa Port, India while on barges for onward loading onto the vessel Maha Deepa.

3

11.     SGS India issued a certificate of analysis, dated January 29, 2010, certifying that the iron ore at issue had a composition of 51.83 percent, and a certificate of weight.  Copies of the certificate of analysis and weight are annexed hereto as Exhibit B and incorporated herein.

12.     On the basis of, inter alia, SGS India's certificate of analysis, Bilasraika issued a commercial invoice to Fareast in the amount of $1,070,650.00.

13.     Upon the presentment of, inter alia, SGS India's certificate of analysis and Bilasraika's commercial invoice, BNP Paribas (Suisse) SA, Geneva honored and paid the invoice in full via the L/C.

14.     Fareast incurred costs in connection with the shipment of the iron ore to Main Sea Port, China, where Fareast had a buyer, including, but not limited to, freight on board charges of $1,048,138.56, a commission of $56,583 paid to Mercury Resources Ltd., Hong Kong, and L/C charges and interest costs of not less than $60,000.

15.     Several inspections of the iron ore at issue at the discharge port of Main Sea Port, China established that it had a composition of not more than 45.74 percent, which caused Fareast to incur additional costs and expenses.

16.     Fareast sold the iron ore at issue to a third party for the sum of $1,293,110.16.

17.     Fareast has repeatedly sought reimbursement of its out-of-pocket losses from SGS India, totaling not less than $942,261.40, which it has failed or refused to pay.

4

## FIRST CAUSE OF ACTION AGAINST SGS INDIA
### (Negligent Misrepresentation)

18.     Paragraphs 1-17 of this Complaint are repeated and realleged as if the same were set forth here at length.

19.     SGS India is a professional organization that routinely performs specialized inspections and issues formal, written certifications necessary to contracts of sale involving goods to be transported by sea.

20.     SGS India is a professional organization that issues formal, written certifications which are essential to commerce by way of the sea.

21.     At all relevant times, SGS India knew, generally, that sellers and buyers of goods to be transported by sea rely on its written certifications for the purpose of determining the actual value of shipments and cargoes of goods and whether to accept such goods and if, so, at what price.

22.     It is custom and practice for shippers of cargoes to disclose the actual sales specifications to inspection companies such as SGS India in connection with their engagement.

23.     SGS India was retained by Bilasraika for the express purpose of inspecting and sampling the iron ore at issue, while on the sea, and issuing a certificate of analysis and a certificate of weight pursuant to the Contract.

24.     SGS India knew or should have known that it had been retained pursuant to a purchase/sale contract.

25.     SGS India knew or should have known that there was a counterparty to the Contract and a potential purchaser of the iron ore at issue.

26.     SGS India knew or should have known that its certificate of analysis and certificate of weight would be relied upon by a buyer in order to determine whether to accept the iron ore and, if so, for what purchase price.

27.     SGS India knew or should have known that its certificate of analysis and certificate of weight were prepared for, <u>inter alia</u>, the benefit of a buyer.

28.     SGS India knew or should have known that Fareast was the counterparty to the Contract and for whose benefit it was retained, that Fareast was a potential purchaser, and that Fareast would be relying on its certificate of analysis and certificate of weight in order to determine whether to accept the iron ore and, if so, for what purchase price.

29.     Copies of SGS India's certificate of analysis and certificate of weight were furnished to Bilasraika after issuance and presented under the L/C to obtain payment for the iron ore shipped by them on the Maha Deepa.

30.     Copies of SGS India's certificate of analysis and certificate of weight procured by Fareast's agents and designees.

31.     SGS India's certificate of analysis inaccurately set forth that the iron ore at issue had a composition of 51.83 percent, when it actually had a composition of not more than 45.74 percent.

32.     SGS India failed to exercise reasonable or due care in its sampling, inspection and testing of the iron ore at issue and in its issuance of its inaccurate certificate of analysis.

33.     Fareast, and its agents and designees, relied on SGS India's certificate of analysis and certificate of weight in accepting the iron ore at issue, paying Bilasraika the full amount set forth on its final invoice, and incurring the additional costs alleged above.

34.     But for SGS India's failure to exercise reasonable or due care in issuing its inaccurate certificate of analysis, Fareast would have rejected the iron ore at issue or imposed a price adjustment penalty against Bilasraika pursuant to the terms of the Contract.

35.     SGS India's failure to exercise reasonable or due care in issuing its inaccurate certificate of analysis was the legal and proximate cause of Fareast's damages.

36.     By reason of the foregoing, SGS India has committed a maritime tort against Fareast.

37.     By reason of the foregoing, SGS India has committed the tort of negligent misrepresentation against Fareast.

38.     By reason of SGS India's negligent misrepresentation, Fareast has suffered damages.

39.     Plaintiff, by reason of the premises, has sustained damages, as best can now be calculated, in the amount of not less than $942,261.40.

## SECOND CAUSE OF ACTION AGAINST SGS SA
### (Alter Ego Liability)

40.     Paragraphs 1-39 of this Complaint are repeated and realleged as if the same were set forth here at length.

7

41.     At all relevant times, SGS India has been a wholly owned subsidiary of SGS SA.

42.     At all relevant times, SGS SA has completely dominated SGS India to such an extent that SGS SA is SGS India's alter ego.

43.     SGS SA used its control over SGS India to cause SGS India to commit the tort of negligent misrepresentation against Fareast.

44.     Numerous factors and considerations demonstrate that SGS SA is SGS India's alter ego.

45.     SGS SA's own 2010 annual report (accessible at www.sgs.com) states, among other things, that:

    a.  SGS India is a wholly owned, direct subsidiary (pg. 158);

    b.  The financial statements and accounting policies of SGS SA and its group of subsidiaries are on a consolidated basis because "Subsidiaries [including SGS India] are controlled by the Group. Control exists when the Group has the power, directly or indirectly, to govern the financial and operating policies of an enterprise so as to obtain benefits from its activities."  (pg. 92);

    c.  The operations of SGS SA and its group of subsidiaries are organized into ten lines of business, each led by an executive vice president, and ten geographic regions, each led by a chief operating officer (pg. 15, 67), who is "responsible for the SGS business in that region and for the local implementation of Group policies and strategies" (pg. 67);

8

     d.   The "Chief Operating Decision Maker" evaluates each business line's performance, "and "allocates resources based on several factors" (pg. 92);

     e.   SGS SA "owns and finances" its subsidiaries throughout the world (pg. 137); and

     f.   SGS SA "has unconditionally guaranteed or provided comfort to financial institutions providing credit facilities (loans and guarantee bonds) to its subsidiaries" (pg. 139).

46.    SGS SA's own website and email server (www.sgs.com) evidence that SGS India is a dominated corporation, including but not limited to the following:

     a.   SGS India is described as one of over 1,250 "offices" worldwide;

     b.   SGS India does not maintain its own website and its web pages are accessible only through a sub-domain of www.sgs.com;

     c.   SGS India's web pages fail to identify it as a separate company; and

     d.   SGS India does not maintain its own domain name server for purposes of email, which emails have the ___@sgs.com address and are routed to SGS SA's domain name server.

47.    The foregoing demonstrates that SGS India is not treated as an independent profit center, that control over operations is managed within ten different business lines/segments by SGS group officers, that SGS SA finances SGS India and guarantees its credit facilities, and corporate distinctiveness has been foregone.

48.     Accordingly, SGS SA is the alter ego of SGS India, and is liable for SGS India's negligent misrepresentation and resultant damages, as best can now be calculated, in the amount of not less than $942,261.40.

## RULE B ATTACHMENT

49.     This action is brought to obtain jurisdiction over Defendants and to obtain security in favor of Plaintiff in respect of its claims against Defendants.

50.     Upon information and belief, and after investigation, Defendants cannot be "found" within this District for the purpose of Rule B of the Supplemental Admiralty Rules for Admiralty or Maritime Claims.

51.     Plaintiff is informed that Defendants have, or will shortly have, assets within this District comprising of, inter alia, cash, stock, funds, credits, or accounts of, belonging to, due to or for the benefit of Defendants ("Assets"), including but not limited to Assets at or being transferred and/or wired to or from various banking institutions and/or other business entities.

52.     The total amount sought to be attached pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims by Plaintiff against Defendants for the principal claim in the amount of $942,261.40.

WHEREFORE, Plaintiff prays as follows:

That process in due form of law according to the practice of this Court may issue against Defendants;

That the Court, in accordance with the provisions of Rule B of the Supplemental Rules for Admiralty or Maritime Claims, direct the issuance of Process of Maritime

10

Attachment and Garnishment attaching all assets within the district owned by Defendants or in which Defendants have a beneficial interest up to the amount of $942,261.40;

That judgment be entered against Defendants and in favor of Plaintiff in the amount of not less than $942,261.40, plus pre-judgment and post-judgment interest accruing on such amount as mandated or permitted by law, costs, and attorneys' fees; and

That the Court grant such other, further and different relief as may be just, proper and equitable in the premises.

Dated: New York, New York
        February 25, 2011

                                EATON & VAN WINKLE LLP


                                By:    s/ Joseph T. Johnson
                                       Joseph T. Johnson

                                3 Park Avenue
                                New York, New York 10016-2078
                                (212) 779-9910
                                jjohnson@evw.com

                                *Attorneys for Plaintiff*

**VERIFICATION OF COMPLAINT**

Joseph T. Johnson, pursuant to the provisions of 28 U.S.C. § 1746, declares and states as follows:

1.     I am a member of the firm of Eaton & Van Winkle LLP, attorneys for Plaintiff, and I make this verification on behalf of Plaintiff.

2.     I have read the foregoing complaint in admiralty and know the contents thereof and the same are true to the best of my knowledge, information and belief.  The sources of my information and the grounds for my belief are communications my office received from the Plaintiff, and an examination of the papers relating to the matters in suit.

3.     The reason this verification is made by the undersigned, and not made by Plaintiff, is that Plaintiff is a foreign corporation or other business entity, no officer or director of which is presently within this district.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
        February 25, 2011

                                        s/ Joseph T. Johnson
                                           Joseph T. Johnson

                                        Eaton & Van Winkle LLP
                                        3 Park Avenue
                                        New York, New York 10016-2078
                                        (212) 779-9910
                                        jjohnson@evw.com

                                        *Attorneys for Plaintiff*

12

## DECLARATION

Joseph T. Johnson, pursuant to the provisions of 28 U.S.C. § 1746, declares and states as follows:

1.      I am a member of the firm of Eaton & Van Winkle LLP, attorneys for Plaintiff, and I am familiar with the facts of this matter.

## DEFENDANTS ARE NOT PRESENT IN THE DISTRICT

2.      I execute this part of this declaration in compliance with the provisions of Rule B(1) of the Supplemental Rules For Certain Admiralty and Maritime Claims.

3.      To the best of my knowledge, information and belief, Defendants cannot be found within this District as defined by the relevant State and Federal Rules of Civil Procedure.

4.      I caused a search to be made by going to the New York State Department of State website (www.dos.state.ny.us) and searching the Corporation and Business Entity Database.  This database contained no record of either Defendant being either a New York corporation or a foreign corporation licensed to do business in New York.

5.      I also checked the websites for each Defendant, and while their respective web pages listed offices and contact numbers for each Defendant, no such offices or numbers were within New York.

6.      I also checked several internet telephone directories and contacted the national directory assistance (411) telephone operator regarding a listing for either Defendant in New York State.  None of these sources contained a listing for either of the Defendants.

7.     I am unaware of any general or managing agents within this District for either of the Defendants.

8.     It is for the foregoing reasons that I request, on behalf of Plaintiff, that the Court execute the accompanying Order For Issuance of Process of Maritime Attachment and Garnishment.

I declare under the penalty of perjury that the foregoing is true and correct.

Dated:  New York, New York
        February 25, 2011

                                        s/ Joseph T. Johnson
                                         Joseph T. Johnson

                                         Eaton & Van Winkle LLP
                                         3 Park Avenue
                                         New York, New York 10016-2078
                                         (212) 779-9910
                                         jjohnson@evw.com

                                         *Attorneys for Plaintiff*

14